1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAMIRO GOMEZ,                          )     No. C 05-1700 JSW (PR)
                                       )
              Petitioner,              )
                                       )
    vs.                                )     **ORDER DENYING PETITION FOR**
                                       )     **WRIT OF HABEAS CORPUS**
A. P. KANE, Warden,                    )
                                       )
              Respondent.              )
                                       )
_____       )

## INTRODUCTION

Petitioner, a prisoner of the State of California, currently incarcerated at the

Correctional Training Facility in Soledad, California, filed a habeas corpus petition

pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms' ("BPT") denial of

parole during parole suitability proceedings in 2004.  This Court ordered Respondent to

show cause why a writ should not issue.  After this Court denied Respondent's motion to

dismiss the petition, Respondent filed an answer, memorandum and exhibits in support

thereof and Petitioner has filed a traverse.  This *pro se* habeas petition is now before the

Court for consideration of the merits.  For the reasons stated below, the petition is denied

on the merits.

## BACKGROUND

Petitioner was convicted of second degree murder in Alameda County Superior

Court in 1988 and was sentenced to a term of fifteen years-to-life in state prison.

Petitioner's minimum parole eligibility date was November 14, 1996.  In this habeas

action, Petitioner does not challenge his conviction, but instead alleges that his due

process rights were violated by the denial of parole, for one year, at his third parole

suitability hearing on May 26, 2004.

At the May 26, 2004 hearing, Petitioner appeared with counsel before a BPT panel.

The panel's decision upon the Statement of Facts in the BPT's July, 2001 report regarding

Petitioner's commitment offense.  The Court includes that summary here:

> On 10-25-86, detectives were notified by Lieutenant Wallster, Hollanbach
> AM Watch Commander, of the murder of victim Johnny Flores.  Detectives
> arrived at the scene, Avenue 43 and Bernice, at 0225 hours.  The victim,
> Johnny Flores, had been confronted by unknown suspects as he was seated
> in his vehicle.  The suspects shot the victim in the head with a shotgun.  The
> investigation revealed the victim was an associate of the "Ave 43 " gang
> which has had an ongoing battle with the "Dogtown" gang.
>
> Suspect Gomez was arrested for PC 187(A) and advised of his rights. Gomez
> waived his rights and stated, "three or four days before the death of the guy
> from the Avenues, my friend loaned me a dent puller.  It is used to pull the
> ignition switch out of cars.  On 10-25-86, around 9 or 10 PM, me and Clavito
> (Ismael Solis) were down in the Hole (Ave 50 and Pasadena Freeway).  We
> were kicking back drinking beer and talking to the guys.  Me and Ismael
> talked about getting a car.  I got in the car and Clavito was still standing
> outside.  I then hit the guy in the face with the dent puller.  The guy went
> back [sic] then opened the door and got out.  Clavito got in behind the wheel
> and we went cruising around Highland Park.  While we were cruising around,
> Clavito said, "Let's go to Chuco's (Juan Moreno) to get the shot gun."  I said,
> "okay.
>
> We drove to Chuco's.  We talked about going to shoot someone from the
> Avenues on the way over to Chuco's.  We went upstairs to Chuco's bedroom
> and asked him if we could borrow the shotgun.  Chuco said, "okay" and
> Clavito got it out from under the bed.  We didn't stay very long at Chuco's.
> We left there and went cruising around Cypress Park and around Ave 43.
> Clavito was driving and stopped on Avenue 43 a couple of blocks from a
> school. I then saw a red Monte Carlo pull up along side of me and stop.
> There was one guy in the car and he looked at me and said, "What are you
> looking at."  He then said, "Avenues," I said, "Dogtown." The guy then went
> down on his right side like he was going to get something.  When he came
> back up, I grabbed the shotgun which was on the floorboard of the car.  As he
> turned around to open the door of his car, I shot him three times.  I think I hit
> him the first time because he went down after the first shot.  We left there and
> drove to the Hole. We drank some beer and stayed there for about one hour.
> Then we drove to Chuco's house and I gave him back the shotgun.  Clavito
> told Chuco that I had shot a dude from the Avenues.  We left Chuco's and
> drove the car a couple of blocks from Chuco's house . . .  For the preparation
> of the P.O.R., the probation officer contacted LAPD investigator who
> characterized Gomez as being a vicious, cold-blooded murderer.  He related
> that Gomez "copped out" and was apparently proud of it.  The officer
> reported that while Gomez was being fingerprinted, he asked if he had done a

good job and wanted to see pictures of the victim.  The officer theorized that Gomez and his crime partner, (Ismael Solis) were trying to impress the other members of the Dogtown gang and to improve their standing in the gang.[1]

(*See* Resp. Ex. 3 (Life Prisoner Evaluation Report) at 1-2; Ex. 4 (Probation Officer's Report); Ex. 7 (Police Report).)

The BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety.  The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's social history, including his dysfunctional family life, educational background, alcohol and drug use, gang involvement, and his juvenile records; his in-prison programming, including his work, vocation, education, participation in self-help groups, and minimal disciplinary history; his counselor and the prison psychologists assessments of his potential for dangerousness; and his parole plans.  (*See* Answer at 3, Ex. 2 at 15-44.)

Petitioner challenged the BPT's May 26, 2004 decision in the state superior, appellate and supreme courts.  The California Court of Appeal for the Fourth Appellate District issued the last reasoned opinion denying Petitioner's claims.  After the Supreme Court of California summarily denied his final state habeas petition on December 17, 2005, Petitioner filed the instant federal petition for a writ of habeas corpus.  The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition.

## DISCUSSION

A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not

---

[1]Petitioner testified at his 2004 parole hearing that he did not shoot the victim in self-defense. (*See* Resp. Ex. 2 at 56.) At the conclusion of the hearing, Petitioner also testified that he was not expecting a parole date any time soon. (*Id*. at 58.)

challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.      <u>Legal Claims and Analysis</u>

Petitioner seeks federal habeas corpus relief from the BPT's May 26, 2004 decision finding him not suitable for parole, and denying him a subsequent hearing for one year, on the ground that the decision does not comport with due process.  Petitioner claims that the BPT's decision is not supported by some evidence in the record having an "indicia of reliability" that Petitioner is currently a threat or unreasonable risk to society.  *See* Petition at 7.  Petitioner also claims that the BPT possesses an "Anti-Parole Policy" which is

1    systemically biased, in violation of his constitutional rights.

2        California's parole scheme provides that the Board "shall set a release date unless

3    it determines that the gravity of the current convicted offense or offenses, or the timing

4    and gravity of current or past convicted offense or offenses, is such that consideration of

5    the public safety requires a more lengthy period of incarceration for this individual, and

6    that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

7    In making this determination, the board considers various factors, including the prisoner's

8    social history, past criminal history, and base and other commitment offenses, including

9    behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

10       California's parole scheme "gives rise to a cognizable liberty interest in release on

11   parole" which cannot be denied without adequate procedural due process protections.

12   *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion*

13   *v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The determination does not depend on

14   whether a parole release date has ever been set for the inmate because "[t]he liberty

15   interest is created, not upon the grant of a parole date, but upon the incarceration of the

16   inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

17       Petitioner's due process rights require that "some evidence" support the parole

18   board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1125 (holding that

19   the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*,

20   472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition);

21   *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). The Ninth Circuit

22   has recently clarified that "California courts have made clear that the "findings that are

23   necessary to deem a prisoner unsuitable for parole are not that a particular factor or factors

24   indicating unsuitability exist, but that a prisoner's release will unreasonably endanger

25   public safety." *Hayward v. Marshall,* 512 F.3d 536*,* 543 (9th Cir. 2008) (citations

26   omitted) (quoting *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007)). The relevant

27   criteria under which the BPT ordinarily determines whether a prisoner is too dangerous to

28                                            5

1    be found suitable for parole are set forth in the California Code of Regulations at Cal.

2    Code Regs. tit. 15, § 2402.  *Id.*  This Court must therefore determine whether the state

3    court decision finding the BPT's decision was supported by "some evidence the parolee's

4    release unreasonably endangers   public safety."  *Id.*  (citation omitted.)

5          The "some evidence" standard is minimally stringent and ensures that "the record

6    is not so devoid of evidence that the findings of [the BPT] were without support or

7    otherwise arbitrary." *Hill*, 472 U.S. at 457.  Determining whether this requirement is

8    satisfied "does not require examination of the entire record, independent assessment of the

9    credibility of witnesses, or weighing of the evidence."  *Id.* at 455-56 (quoted in *Sass*, 461

10   F.3d at 1128).

11         Due process also requires that the evidence underlying the parole board's decision

12   have some indicia of reliability.  *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

13   Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear

14   before, and present evidence to, the board."  *Morales v. California Dep't of Corrections*,

15   16 F.3d 1001, 1005 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 499 (1995).  In sum,

16   if the parole board's determination of parole unsuitability is to satisfy due process, there

17   must be some evidence, with some indicia of reliability, to support the decision.  *Rosas v.*

18   *Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

19         The record shows that the BPT panel afforded Petitioner and his counsel an

20   opportunity to speak and present their case at the hearing, gave them time to review

21   Petitioner's central file, allowed them to present relevant documents and provided them

22   with a reasoned decision in denying parole.  The panel concluded that Petitioner "is not

23   suitable for parole and would pose an unreasonable risk of danger to society or a threat to

24   public safety if released from prison." (Resp. Ex. 2 at 59: 9-12.)   The panel explained

25   that it found that the offense involved "the offense was carried out in a dispassionate

26   manner, and the offense was carried out in a manner that demonstrates a callous disregard

27   for human life."  (*Id.* at 59:14-17.)  The panel further described the crime as  "horrendous

28                                             6

and needless, someone was killed for no apparent reason." (Id. at 60: 12-14.)  The panel

also found that Petitioner "has a history of unstable and tumultuous relationships with

others.  He has an escalating pattern of criminal conduct.  He has failed previous grants of

probation and cannot be counted upon to avoid criminality."  (*Id.* at 60:14-19.)  The panel

also commented on Petitioner's prior juvenile criminality which includes, "joining a

juvenile gang at age 13, abusing alcohol and drugs, [and] participating in gang activities."

(*Id*. at 60:20-22.)  Additionally, the panel further found that Petitioner "has a criminal

arrest history, a couple of burglaries, drunk, in possession of marijuana." ( *Id*. at 60:22-

24.)

The panel also found that "the psychological evaluation performed 5-23-01 by M.

Carswell, a clinical psychologist, is not totally supportive of release." (*Id*. at 60:24-27 and

61: 1-2.)  On page 5 of the psychologist's report it states, "if released to the community

[Petitioner's] violence potential is estimated to be slightly above the average citizen in the

community only because statistically someone who has been violent in the past could be

considered at risk for violence again." (*Id*. at 61:3-10.)

The panel further found that Petitioner needed to firm up his parole plans.  (*Id.* at

61:11-12.)  The letters provided by Petitioner, some of which were in Spanish needed to

provide more detail. (*Id*. at 61: 12-14.)  "The Hearing Panel [made] the following

findings: The prisoner needs to continue to participate in self-help, to face, discuss,

understand, and cope with stress in a nondestructive manner.  Until progress is made, the

prisoner continues to be unpredictable and a threat to others." (*Id*. at 61: 19-25.)

The panel commended Petitioner for all of the positive things he has done while in

prison, for receiving no 115s while in CDC, (*Id*. at 61: 26), and for receiving vocational

certificates in masonry, mill and cabinet, as a general office clerk, vocational cleaning,

drywall, and culinary, self-help participation, AA and NA for 15 years.  (*Id*. at 62:1-5.)

Additionally, the panel noted Petitioner's participation in programs such as the IMPACT

program, Gang Awareness, Breaking Barriers, ACTS, two Parenting classes and a disease

1   prevention course.  (*Id.* at 62:6-10.)  The panel also noted that Petitioner is currently

2   working in the dinning hall.  (*Id.* at 62:10-12.)

3          The panel found, however, that "these positive aspects of his behavior, do not

4   outweigh his factors for unsuitability."(*Id.* at 62:13-14.)  The panel recommended that

5   Petitioner "remain disciplinary-free, continue to participate in any self-help that is

6   available and cooperate with clinicians in the completion of a clinical evaluation before

7   the next hearing in one year." ( *Id.* at 62:16-20.)

8          The state superior court reviewed and considered the decision of the BPT and

9   found that "the circumstances of Petitioner's commitment offense were enough to

10  establish more than the minimum necessary to sustain a conviction for second degree-

11  murder . . . The superior court also found some evidence to support the denial of parole

12  based on Petitioner's unstable social history and his escalating pattern of criminal

13  conduct." (Resp. Ex. 8 at 2.)  After finding that there was some evidence to support the

14  Board's decision, the California Court of Appeal denied Petitioner's habeas petition.

15  (Resp. Ex. 9.)  The California Supreme summarily denied Petitioner's petition for review.

16         The state court's rejection of Petitioner's due process claim was not contrary to, or

17  an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable

18  determination of the facts.  *See* 28 U.S.C. § 2254(d).  The BPT's decision to deny

19  Petitioner parole is supported by some evidence in the record and that evidence bears

20  some indicia of reliability.  *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of

21  parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916

22  (upholding denial of parole based solely on gravity of offense and conduct prior to

23  imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal

24  history, cruel nature of offense, and need for further psychiatric treatment).  The inquiry

25  under *Hill* is simply "whether there is *any* evidence in the record that could support the

26  conclusion reached by the [BPT]."  *Hill*, 474 U.S. at 455-56 (emphasis added).

27         In this case, there is evidence that the "commitment offense was carried out in an

28

especially violent and cruel manner, and in a dispassionate manner that demonstrates a callous disregard for human life." (*See* Resp. Ex. 2 at 59.)   Petitioner and his crime partner first car-jacked a car by hitting the owner in the face with a dent puller.  (*Id.*) Then they decided that they needed a shotgun to look for a rival gang member to kill. (*Id.*)  They obtained a shotgun from a friend, pulled up alongside a stranger, and Petitioner shot him three times based on Petitioner's belief that he was a member of the "Avenues" gang.  (*Id*. at 59-60.)  In addition, the motive for the offense -- advancement in his gang – was extremely trivial in relationship to the gravity of shooting and killing a complete stranger.

There is also some evidence that Petitioner had an unstable social history and prior criminality.  *Cf.* Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability).  A noted by the panel, Petitioner "has an escalating pattern of criminal conduct," including prior arrests for drug possession and burglary.  Petitioner also has a history of alcohol and drug abuse, as well as a "history of unstable and tumultuous relationships with others," including physically abusing his girlfriend.  (*Id.* at 60:15-16, 20-21; Ex. 4 at 7)

The foregoing evidence of the way Petitioner carried out the murder, the trivial motive for it, and Petitioner's past criminal conduct amounts to "some evidence" that he would pose a threat to society if released.  Additionally, the evidence that Petitioner did not have definitive parole plans, and the psychologist's opinion that Petitioner has a slightly above average potential to pose a threat to society, also reasonably indicates that Petitioner posed an increased risk of danger if he was released.  Therefore, the state courts' determination that there was some evidence to support the BPT's decision is not contrary to or an unreasonable application of  consistent with established Supreme Court precedent.

The Ninth Circuit has noted that continued reliance on the unchanging factors of Petitioner's commitment offense and prior history will "at some point violate due

1   process" unless the unchanging circumstances reliably establish that Petitioner presents

2   an unreasonably public safety risk.  *See Hayward*, 512 F.3d at 545 (citing *Irons*, 505 F.3d

3   at 854).  The Ninth Circuit has also stated, however, that "[u]nder AEDPA it is not our

4   function to speculate about how future parole hearings could proceed."  *Sass*, 461 F.3d at

5   1129.  In any event, the concern raised in *Hayward* is not yet present in this case because

6   Petitioner had not only served 16 years of his sentence of 15 years to life.  *Cf., e.g.,*

7   *Irons*, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole at

8   fifth parole hearing after petitioner had served 16 years in prison, which was less than the

9   minimum term); *Sass*, 461 F.3d at 1129 (same, for second and third parole hearings after

10  petitioner had served 11 and 12 years in prison).  Moreover, as discussed above, the

11  challenged parole denial here was based on other evidence in addition to the commitment

12  offense and criminal history.  Therefore, the instant case does not implicate the concerns raised

13  in *Hayward* and *Biggs*.

14         Petitioner further argues that the BPT possesses an "anti-parole policy" that is

15  biased and violates his constitutional rights.  Petitioner has set forth no evidentiary

16  support for his bias claim.  But even if he had, there is no evidence in the record

17  indicating that this alleged bias affected the BPT's decision or served as the basis for

18  denying Petitioner parole.  To the contrary, the transcript from Petitioner's parole hearing

19  demonstrates that he received an individualized assessment of his potential parole

20  suitability.  Petitioner's reliance on the high percentage of parole denials for life inmates

21  provides no proof of the BPT's alleged bias against parole.  *Cf. California Dept. of*

22  *Corrections v. Morales*, 514 U.S. 499, 510-11 (1995) (citing that 90 percent of all

23  California inmates are found unsuitable for parole as evidence that deferring annual

24  parole suitability hearings was lawful and reasonable).  The state courts' rejection of

25  Petitioner's claims cannot be said to be objectively unreasonable.  *See* 28 U.S.C. §

26  2254(d); *Williams*, 529 U.S. at 409.

27         Accordingly, Petitioner is not entitled to habeas relief.

28
                                          10

1

**CONCLUSION**

2    For the reasons set forth above, the petition for a writ of habeas corpus is

3    DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

4    IT IS SO ORDERED.

5    DATED:  April 17, 2008

6                                                    JEFFREY S. WHITE
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21                            UNITED STATES DISTRICT COURT

22                                         FOR THE

23                        NORTHERN DISTRICT OF CALIFORNIA

24

25

26    GOMEZ,                                  Case Number: CV05-01700 JSW

27               Plaintiff,                   **CERTIFICATE OF SERVICE**

28       v.

1 | KANE et al,

2 |              Defendant.
                                                    /

3 |

4 | I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
Court, Northern District of California.

5 |

6 | That on April 17, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said
copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery

7 | receptacle located in the Clerk's office.

8 |

9 | Ramiro Gomez
Correctional Training Facility

10 | P.O. Box 689
D87189

11 | Soledad, CA 93960-0689

12 | Dated: April 17, 2008

*Jennifer Ottolini*

13 | Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |